PARKER, Justice.
Numerous plaintiffs, identified below, filed a wrongful-death action under § 6-5-410, Ala. Code 1975, against Continental Motors, Inc. ("CMI"), and RAM Aircraft, LP ("RAM"), among others, in the Mobile Circuit Court ("the circuit court") on behalf of the heirs of Mark Goldstein, Marjorie Gonzalez, and Luis Angel Lopez Barillas (hereinafter collectively referred to as "the decedents"). CMI and RAM filed motions for a summary judgment arguing that none of the plaintiffs was a personal representative of the decedents and, thus, that the plaintiffs lacked the authority to pursue the wrongful-death claims. The circuit court denied CMI's and RAM's summary-judgment motions. CMI and RAM separately petition this Court for a writ of mandamus directing the circuit court to set aside its orders denying their summary-judgment motions and to enter an order granting their summary-judgment motions, thereby dismissing the plaintiffs' wrongful-death action for lack of subject-matter jurisdiction. We grant CMI's and RAM's petitions in part and deny them in part.
Facts and Procedural History
On March 10, 2010, the decedents died in an airplane crash in Tegucigalpa, Honduras.
*1150 The crash was allegedly a result of a defective starter-adapter assembly that had been manufactured by CMI and/or the failure of the airplane's engine, which had been refurbished by RAM. Mark and Marjorie were citizens and residents of Honduras; Luis was a citizen and resident of Guatemala. The administration of each of the decedents' estates was conducted in their respective countries of citizenship and residence.
On June 23, 2010, Belinda Milagro Valladares Andino was appointed as the "administrator of the intestate will or testament" of Luis in Guatemala. On September 2, 2010, Adam Goldstein, Andrew Goldstein, and Karen Rosenthal were recognized by a Honduran court as the "intestate heirs of all goods, rights and shares left at [Mark's] death." There is no Honduran court order before this Court indicating that any individual was appointed as an administrator or personal representative of Marjorie's estate.
On March 8, 2011, the following plaintiffs filed in the circuit court the underlying wrongful-death action against CMI and RAM, among others:
"Gilbert Goldstein, Alice Goldstein, individually, and as Personal Representatives of the Estate of Mark Goldstein, deceased; Adam Goldstein; Andrew Goldstein; David Goldstein; Jose Rolando Gonzalez, individually and as Personal Representative of the Estate of Marjorie Alexandra Gonzalez, and as guardian and next friend of Alanis Montserrath Gonzalez, a minor; Belinda Milagro Valladares Andino, individually, as the natural mother and next friend of Francisco Valladares, a minor, and as Personal Representative of the Estate of Luis Angel Lopez Barillas, deceased...."[1]
The plaintiffs' complaint stated that, because the "subject crash and injuries occurred in Honduras[,] ... the case will be governed by the substantive law of Honduras." Apparently, Honduran law allows a decedent's next-of-kin to pursue a wrongful-death action; Alabama law authorizes only a "personal representative" to pursue a wrongful-death action. See § 6-5-410.
On October 31, 2011, Adam Goldstein and Rosenthal were appointed by a Florida court as personal representatives of Mark's estate. The Florida court's order appointing Adam Goldstein and Rosenthal as personal representatives states, in pertinent part:
"Whereas, Mark F. Goldstein ... died on March 10, 2010, owning assets in the State of Florida, and
"....
"Whereas ... Adam Joseph Goldstein and Karen Rosenthal have been appointed personal representatives of the Florida estate of the decedent and [have] performed all acts prerequisite to issuance of Letters of Administration in the estate,
"Now, therefore, I, the undersigned circuit court judge, declare Adam Joseph Goldstein and Karen Rosenthal duly qualified under the laws of the State of Florida to act as ancillary personal representatives of the estate of Mark F. Goldstein, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit *1151 and the law directs; and to make distribution of the estate according to law."
On February 29, 2012, representatives of the decedents filed in the Mobile Probate Court ("the probate court") petitions for the appointment of an administrator ad litem for each of the decedents' estates pursuant to § 43-2-250, Ala. Code 1975. The petitions stated that, "under Honduran law, the estate proceedings for the decedent[s] could be closed prior to the resolution of the pending [wrongful-death] action which would leave the estate ... without an administrator to continue the pending [wrongful-death] action on behalf of the decedent[s]." Each petition was assigned a different case number in the probate court. On March 2, 2012, the probate court entered identical orders in each of the three cases appointing Leslie T. Fields as the administrator ad litem of each of the decedents' estates "with the ... limited powers, duties, and responsibilities ... to pursue the claims of [the decedents], or [their] estate[s], as set forth in [the wrongful-death action] before the Circuit Court of Mobile County, Alabama."
On March 7, 2012, the plaintiffs filed an amended complaint adding the following parties as plaintiffs: "Adam Goldstein, individually, and as Co-Personal Representative of the Estate of Mark Goldstein, deceased"; Alice Goldstein; "Karen Rosenthal, as Co-Personal Representative of the Estate of Mark Goldstein, deceased"; and "Leslie T. Fields as Co-Personal Representative" of the estates of the decedents.
During the pendency of this action, the Alabama Constitution was amended by the adoption of Amendment No. 884, now § 13.50, Ala. Const. 1901, effective December 1, 2014. In its answer to one of the plaintiffs' numerous amended complaints, CMI asserted as an affirmative defense that § 13.50 "barred in whole or in part" the plaintiffs' claims. Section 13.50 states, in pertinent part:
"(b) The law of Alabama provides:
"....
"(5) Different from the law of the State of Alabama is foreign law, which is any law, rule, or legal code, or system established, used, or applied in a jurisdiction outside of the states or territories of the United States, or which exist as a separate body of law, legal code, or system adopted or used anywhere by any people, group, or culture different from the Constitution and laws of the United States or the State of Alabama.
"....
"(c) A court, arbitrator, administrative agency, or other adjudicative, arbitrative, or enforcement authority shall not apply or enforce a foreign law if doing so would violate any state law or a right guaranteed by the Constitution of this state or of the United States."
On June 10, 2015, the plaintiffs filed a motion stating that § 13.50 applied to the case and that Alabama law, rather than Honduran law, should be applied to the plaintiffs' wrongful-death action.
On July 29, 2016, the circuit court entered an order stating that § 13.50 "requires the application of the substantive law of the State of Alabama in this wrongful death action. Therefore, it is hereby ordered, adjudged and decreed that this case is governed by the substantive law of the State of Alabama."
On August 31, 2017, CMI filed a motion for a summary judgment. CMI argued that none of the plaintiffs had been appointed as personal representative of any of the decedents' estates for purposes of Alabama's wrongful-death statute and, thus, none had the authority under § 6-5-410 to file a wrongful-death action. Accordingly, *1152 CMI argued that the plaintiffs' complaint was a nullity. CMI also argued that the probate court did not have the authority to appoint Fields as the administrator ad litem of the decedents' estates and that, even if Fields had been properly appointed, an administrator ad litem does not have the authority to pursue a wrongful-death claim. On October 30, 2017, RAM filed a motion for a summary judgment, essentially joining CMI's summary-judgment motion.
The circuit court denied CMI's and RAM's summary-judgment motions on November 13 and 27, 2017, respectively. CMI and RAM then separately petitioned this Court for a writ of mandamus directing the circuit court to vacate its judgments denying their summary-judgment motions and to enter an order granting those motions. We consolidated the petitions for the purpose of writing one opinion.
Standard of Review
Although the denial of a summary-judgment motion is not generally reviewable by a petition for a writ of mandamus, see Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 761-62 (Ala. 2002), this Court has stated: " ' "Mandamus review is available where the petitioner challenges the subject-matter jurisdiction of the trial court based on the plaintiff's alleged lack of standing to bring the lawsuit." Ex parte HealthSouth Corp., 974 So.2d 288, 292 (Ala. 2007).' " Ex parte Hubbard Props., Inc., 205 So.3d 1211, 1213 (Ala. 2016) (quoting Ex parte Rhodes, 144 So.3d 316, 318 (Ala. 2013) ). This Court set forth the applicable standard of review in Ex parte Bio-Medical Applications of Alabama, Inc., 216 So.3d 420, 422 (Ala. 2016) :
" 'A writ of mandamus is an extraordinary remedy, and it will be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993).'
" Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998)."
Discussion
Initially, we note that the facts of this case present a unique situation. Throughout much of the litigation, the substantive law of Honduras, the site of the airplane crash, has been applied. However, based on the adoption of what is now § 13.50, Ala. Const. 1901, during the pendency of the litigation, the circuit court entered an order stating that Alabama substantive law, rather than Honduran substantive law, applied. This opinion should be read in the context of this peculiar situation.
As set forth above, we note that the substantive law of Honduras applied at the outset of this case. CMI and RAM make no argument that the plaintiffs failed to comply with Honduran law in pursuing their wrongful-death claims against CMI and RAM. Under the substantive law of Alabama, however, only a "personal representative" has the authority to pursue a wrongful-death action on the behalf of a decedent's heirs.[2] § 6-5-410(a), Ala. Code 1975. Accordingly, under Alabama law, only those plaintiffs listed in the complaint who are personal representatives of the decedents may pursue the wrongful-death action.
*1153 CMI and RAM argue that the plaintiffs' wrongful-death action is a nullity because, they say, none of the plaintiffs qualifies as a "personal representative" under § 6-5-410(a). CMI and RAM make arguments concerning each plaintiff listed as a personal representative in the complaint; we will address those arguments in turn.
In the original complaint, the following plaintiffs are listed as personal representatives: "Gilbert Goldstein, Alice Goldstein, individually, and as Personal Representatives of the Estate of Mark Goldstein, deceased"; "Jose Rolando Gonzalez, individually and as Personal Representative of the Estate of Marjorie Alexandra Gonzalez"; and "Belinda Milagro Valladares Andino, individually, ... and as Personal Representative of the Estate of Luis Angel Lopez Barillas, deceased." It is undisputed that none of those plaintiffs was appointed as a personal representative of his or her decedent's estate by a court in the United States. In fact, as set forth above, nothing in the documents submitted by the parties indicate that any court appointed Gilbert Goldstein or Alice Goldstein as Mark's personal representative or that any court appointed Jose Rolando Gonzalez as Marjorie's personal representative. A Guatemalan court did appoint Andino as the "administrator of the intestate will or testament" of Luis, but the parties have not explained the legal ramifications of such an appointment.
Because there is nothing before this Court indicating that Gilbert, Alice, or Jose were appointed personal representatives of Mark's estate and Marjorie's estate, Gilbert, Alice, and Jose are not the proper parties to pursue a wrongful-death claim on behalf of the heirs of Mark or Marjorie.[3] Therefore, the original complaint does not name a personal representative under § 6-5-410 for the estate of Mark or the estate of Marjorie. Concerning Andino, CMI and RAM argue that she is not the proper party to pursue a wrongful-death claim on behalf of Luis's heirs because, they argue, although she was appointed the "administrator of the intestate will or testament" of Luis in Guatemala, the administrator of an intestate will or testament under Guatemalan law is not the same as an administrator of an estate under Alabama law. See Waters v. Hipp, 600 So.2d 981, 982 (Ala. 1992) ("A 'personal representative,' for the purposes of § 6-5-410, is an executor or an administrator."). In support of their argument, CMI and RAM presented the affidavit testimony of Keith S. Rosenn, an expert on Latin American law who qualified as an expert witness, which states, in pertinent part:
"4. Both Guatemala and Honduras are civil law countries. Civil law countries do not recognize the common law concept of an 'estate' created upon one's death. As the authors of one of the leading casebooks on Comparative Law have pointed out:
" 'In civil countries, title and right to possession of a decedent's assets automatically vest, at the moment of death in the testamentary or legal heirs as universal successors of the deceased. Rudolph Schlesinger, Hans Baade, Peter Herzog & Edward Wise, COMPARATIVE LAW 31 (6th ed. 1998).'
*1154 "....
"5. In this respect, the laws of ... Guatemala and Honduras are similar. Neither Guatemala nor Honduras recognizes the Anglo-American concept of an estate with legal capacity to sue. Instead, they utilize the civil law concept of 'succession', which is not a legal entity and lacks capacity to sue or be sued. Pedro Lafont Pianetta, DERECHO DE SOCESIONES 174 (5th ed., Book I, 1989). Guatemala and Honduras have neither an equivalent to the English Statute of Wills nor to the contemporary equivalents in the laws of the states of the United States. Instead, property rights pass directly to the heirs of the decedent. The heirs represent the decedent and succeed to all transmissible rights and obligations.
"6. When a person dies intestate in Guatemala or Honduras, there is no appointment of a personal representative, executor, or equivalent thereof because there is no estate.
"7. Survival actions, as that term is used in the United States to mean actions on behalf of the decedent's estate for losses or injuries sustained by the defendant personally, are not recognized under Guatemalan or Honduran law. A third party has no independent right to bring suit directly against a defendant to recover damages for another's wrongful death."
(Capitalization in original.) According to Rosenn's affidavit testimony, there is no such thing as an administrator of an estate or a personal representative under Guatemalan law.
The plaintiffs assert that they "were performing substantially the same function in their respective countries" as an administrator in the United States would perform. However, the plaintiffs cite no law nor do they provide any evidence in support of their assertion. In fact, the plaintiffs offer no real argument in response to Rosenn's affidavit testimony. The plaintiffs merely question Rosenn's opinion, as follows:
"CMI's proposed expert Keith Rosenn claims that Guatemala's and Honduras's legal systems do not have 'personal representatives' like Alabama's legal system does. One must question how Mr. Rosenn can make such a claim when 'the term "personal representative" is not defined in § 6-5-410.' [ Affinity Hosp., L.L.C. v. Williford, 21 So.3d 712,] 715 [ (Ala. 2009) ]."
The plaintiffs rely on Affinity Hospital, L.L.C. v. Williford, 21 So.3d 712, 715 (Ala. 2009), for the proposition that "the term 'personal representative' is not defined in § 6-5-410." This, of course, is true; § 6-5-410 does not provide a definition of the term "personal representative." However, the term "personal representative" has been defined by the courts of this State. In Scroggins v. Johnson, 907 So.2d 1059, 1064 (Ala. Civ. App. 2004), the Alabama Court of Civil Appeals stated the following concerning the function and role of a "personal representative":
"In the context of a wrongful-death action, the sole role of a personal representative, such as an administrator or an executor, ' "is to maintain the suit, and collect the damages and pay them over to the distributees" '; in other words, an administrator is ' "a mere agency and conduit, provided by the [wrongful-death] statute for bringing the suit, collecting the damages, and passing them over to those entitled thereto." ' Hatas v. Partin, 278 Ala. 65, 68, 175 So.2d 759, 761 (1965) (quoting Kennedy v. Davis, 171 Ala. 609, 612, 55 So. 104, 105 (1911) ). For this reason, the personal representative may properly be said to be 'only [a] nominal or formal party.'
*1155 Board of Trustees of Univ. of Alabama v. Harrell, 43 Ala. App. 258, 261, 188 So.2d 555, 557 (1965). Indeed, it has been said that when a personal representative brings a wrongful-death action, he 'does not act strictly in his capacity as administrator of the estate of his decedent' because the administrator 'is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent.' Hatas, 278 Ala. at 68, 175 So.2d at 761."
See also Kirksey v. Johnson, 166 So.3d 633, 645-46 (Ala. 2014). Contrary to the plaintiffs' assertion, the term "personal representative" is well defined in Alabama law. Rosenn's affidavit testimony indicates that there is no such equivalent under Guatemalan law, and the plaintiffs have not offered any argument or evidence to rebut that statement. Accordingly, we conclude that CMI and RAM have demonstrated that Andino is not a personal representative of Luis's estate and, thus, not the proper party to maintain a wrongful-death action on behalf of Luis's heirs.
CMI and RAM have demonstrated that the original complaint filed by the plaintiffs was not filed by a personal representative of any of the decedents. Under Alabama law, because none of the plaintiffs had the authority to commence the wrongful-death action, the original complaint would be considered a nullity. See Northstar Anesthesia of Alabama, LLC v. Noble, 215 So.3d 1044, 1049 (Ala. 2016). CMI and RAM argue that this should settle the case because, under Alabama law, the original complaint is a nullity. However, it is undisputed that the substantive law of Honduras, not Alabama, applied at the time the original complaint was filed.
Whether an individual has the authority to pursue a wrongful-death action is a question of substantive law. A wrongful-death cause of action was unknown at common law; it is purely statutory. The Legislature, in adopting § 6-5-410, created the wrongful-death cause of action and determined that only a "personal representative" has the right to pursue a wrongful-death claim. Section 6-5-410 is a substantive law in that it is " '[t]hat part of law which creates, defines, and regulates rights and duties of parties, as opposed to "adjective, procedural, or remedial law," which prescribes method of enforcing the rights or obtaining redress for their invasion.' Black's Law Dictionary 1429 (6th ed. 1990)." Board of Sch. Comm'rs of Mobile Cty. v. Christopher, 97 So.3d 163, 169 (Ala. Civ. App. 2012). This Court stated in Scrushy v. Tucker, 70 So.3d 289, 299 (Ala. 2011), that "[m]atters are sometimes said to be procedural if they ' "concern methods of presenting to a court the operative facts upon which legal relations depend" '; whereas substantive matters are ' "those which concern the legal effect of those facts after they have been established." ' Schoenvogel v. Venator Group Retail, Inc., 895 So.2d 225, 251 (Ala. 2004) (quoting G. Stumberg, Principles of Conflict of Laws 133 (3d ed. 1963) )." Section 6-5-410, the statute that creates the right of a "personal representative" to pursue a wrongful-death claim on behalf of a decedent's heirs, is a substantive law in that it "creates, defines, and regulates rights and duties of parties." Therefore, because the substantive law of Honduras applied at the time the original complaint was filed, this substantive-law question-whether any of the plaintiffs had the authority to file a wrongful-death action-was to be decided according to the law of Honduras.
It is undisputed that the original complaint complied with the substantive law of Honduras; CMI and RAM have presented *1156 no argument that the plaintiffs who filed the original complaint did not have the authority to pursue the wrongful-death action. Accordingly, at the time the original complaint was filed it was not a nullity under the substantive law of Honduras and, thus, was capable of being amended. In fact, the original complaint was amended several times to add additional plaintiffs. At the time the circuit court granted the plaintiffs' motion and entered its July 29, 2016, order determining that the substantive law of Alabama applied in this case, the parties listed as plaintiffs in the numerous amended complaints were properly before the circuit court in accordance with the substantive law of Honduras. Therefore, in order to prevail, CMI and RAM must demonstrate that none of the plaintiffs named in the complaint as amended prior to July 29, 2016, are personal representatives of the decedents.
On March 7, 2012, the plaintiffs amended their complaint adding the following parties as personal representatives: "Adam Goldstein, individually, and as Co-Personal Representative of the Estate of Mark Goldstein, deceased"; "Karen Rosenthal, as Co-Personal Representative of the Estate of Mark Goldstein, deceased"; and "Leslie T. Fields as Co-Personal Representative" of the estates of the decedents. CMI and RAM argue that none of those named personal representatives actually meet the definition of "personal representative" under § 6-5-410 and, thus, do not have the authority to pursue the wrongful-death action.
Adam and Rosenthal claimed to be the personal representatives of Mark based on their appointment by a Florida court. An ancillary estate for Mark was opened in Florida because some of Mark's assets were located in Florida at the time of his death. The Florida court granted Adam and Rosenthal "ancillary letters of administration" appointing them
"under the laws of the State of Florida to act as ancillary personal representatives of the estate of Mark F. Goldstein, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law."
It is well established that a personal representative appointed by a court in another state may maintain a wrongful-death action in Alabama. See Hatas v. Partin, 278 Ala. 65, 175 So.2d 759 (1965). CMI and RAM do not argue otherwise. Instead, CMI and RAM argue that Adam and Rosenthal are not personal representatives under § 6-5-410(a) because they were appointed personal representatives of an ancillary estate, and not the domiciliary estate. CMI and RAM cite only the following sentence from Harrison v. Mahorner, 14 Ala. 829, 830 (1848), in support of their argument: "Our statute which authorizes foreign executors and administrators to sue in this state, must be construed to give this authority to executors and administrators in chief only, and not to those whose administration is ancillary merely." This sentence, however, is not part of this Court's opinion, but is the Court's summary of the plaintiff's arguments before this Court. See Harrison, 14 Ala. at 830-32. The actual opinion of the Court begins on page 832 of the 14th volume of Alabama Reports. Therefore, CMI and RAM have essentially cited no authority in support of their argument. Further, CMI and RAM do not offer any discussion or analysis of Harrison explaining why they believe it applies. Harrison appears to be distinguishable in that it does not involve a *1157 wrongful-death action, let alone a wrongful-death action filed in Alabama by a personal representative who was appointed in another state. Instead, the issue involved in Harrison was whether the personal representative of a foreign ancillary estate had the authority to withdraw assets from Alabama to be administered as part of the foreign ancillary estate rather than allowing the assets to be administered in Alabama or the foreign domiciliary estate. See Harrison, 14 Ala. at 838. Harrison is distinguishable.
CMI and RAM have not directed this Court's attention to any authority indicating that a personal representative of a foreign ancillary estate is without authority to pursue a wrongful-death claim under § 6-5-410(a). In the absence of such authority, it appears that a personal representative of a foreign ancillary estate is "[a] personal representative," as that term is used in § 6-5-410(a) ;[4] Adam and Rosenthal have the authority to pursue the wrongful-death claim on behalf of Mark's heirs. Our conclusion as to this issue should be read in light of, and is limited to, the peculiar facts presented on original submission in this case.
Next, CMI and RAM argue that Adam and Rosenthal are judicially estopped from pursuing a wrongful-death claim in Alabama. CMI and RAM note that, in Adam and Rosenthal's pleading filed in the Florida court seeking to be named as personal representatives of Mark's estate, Adam and Rosenthal stated that "[t]his is an ancillary proceeding for the limited purpose of administering [Mark's] assets located in ... Florida." CMI and RAM argue that this statement in Adam and Rosenthal's pleading before the Florida court prohibits Adam and Rosenthal from pursuing the wrongful-death claim in Alabama. CMI and RAM provide a general citation to Ex parte Jackson Hospital & Clinic, Inc., 167 So.3d 324 (Ala. 2014), in support of their argument.
Ex parte Jackson Hospital is distinguishable from the present case in that it does not involve a personal representative appointed in another state who pursues a wrongful-death claim in Alabama. Rather, the question in Ex parte Jackson Hospital was whether an individual was barred from prosecuting her medical-malpractice claims against a hospital after she had failed to disclose those claims during the course of her bankruptcy proceedings. It was in that context that the doctrine of judicial estoppel was applied in Ex parte Jackson Hospital to bar the prosecution of the plaintiff's medical-malpractice claims. Further, the doctrine of judicial estoppel consists of several elements. See Ex parte First Alabama Bank, 883 So.2d 1236 (Ala. 2003) (identifying six elements the party asserting the doctrine of judicial estoppel must prove in order for the doctrine to apply). CMI and RAM have not presented any argument concerning the several elements of the doctrine of judicial estoppel, and it is not this Court's function to craft arguments for the parties. See Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007) (" ' "[I]t is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument." ' Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994) )."). Therefore, CMI and RAM have not demonstrated *1158 that the doctrine of judicial estoppel prohibits Adam and Rosenthal from being recognized as personal representatives and pursuing the wrongful-death claim on behalf of Mark's heirs.
CMI and RAM have failed to demonstrate that Adam and Rosenthal are without authority to pursue a wrongful-death claim on behalf of Mark's heirs. Therefore, CMI and RAM have failed to demonstrate that they are entitled to have the wrongful-death claim brought on behalf of Mark's heirs dismissed for lack of subject-matter jurisdiction.
CMI and RAM also challenge the authority of those pursuing wrongful-death claims on behalf of the heirs of Marjorie and Luis. As mentioned above, Fields claims to have the authority to pursue the wrongful-death claims of the decedents because she was appointed by the probate court as the administrator ad litem of each of the decedents' estates "with the ... limited powers, duties, and responsibilities ... to pursue the claims of [the decedents], or [their] estate[s], as set forth in [the wrongful-death action] before the Circuit Court of Mobile County, Alabama." The plaintiffs rely on Williford, supra, for their argument that an administrator ad litem has the authority to pursue a wrongful-death action. Citing Justice Bolin's special concurrence in Golden Gate National Senior Care, LLC v. Roser, 94 So.3d 365 (Ala. 2012), CMI and RAM argue that an administrator ad litem appointed under § 43-2-250, as was Fields, "lacks the capacity of a 'personal representative' " under § 6-5-410.
In his special concurrence in Golden Gate, Justice Bolin thoroughly explained why a wrongful-death action "may be instituted only by a personal representative, not by an administrator ad litem." 94 So.3d at 365 (Bolin, J., concurring specially). In short, Justice Bolin concluded that an administrator ad litem appointed under § 43-2-250 is not a personal representative for purposes of Alabama's wrongful-death statute, because § 43-2-250 allows a probate court to appoint an administrator ad litem only "when the estate of a deceased person must be represented and there is no executor or administrator of such estate" and "when the estate of a deceased person must be represented and the executor or administrator is interested adversely to the estate." Golden Gate, 94 So.3d at 370 (Bolin, J., concurring specially). Justice Bolin explained:
"The decedent's estate is not interested in a wrongful-death action or in any proceeds derived from such an action. Kennedy v. Davis, 171 Ala. 609, 55 So. 104 (1911) (recognizing that the personal representative is acting only as a trustee for those who are the designated beneficiaries under the Wrongful Death Act). None of the proceeds pass through the estate, which would make them subject to the claims of creditors. The proceeds pass to the decedent's heirs; this is true whether the administration is testate or intestate."
Id. Justice Bolin also explained in his special writing why Williford, relied upon in this case by the plaintiffs, is not authoritative on the issue whether an administrator ad litem has the authority to pursue a wrongful-death claim under § 6-5-410 :
"This brings us to Affinity Hospital, LLC v. Williford, 21 So.3d 712 (Ala. 2009). In Williford, the mother of a decedent who had committed suicide at Trinity Medical Center petitioned the Jefferson County Probate Court to appoint the county administrator, Doris Williford, as administrator ad litem. The request was made in order to obtain medical records held by Trinity Medical Center for an investigation to determine whether there were grounds to assert a *1159 wrongful-death claim. The probate court granted the petition. Thereafter, without any subsequent appointment of Williford as a personal representative of the decedent's estate by the probate court, Williford, as administrator ad litem, filed a wrongful-death action in the circuit court. Trinity answered and challenged Williford's authority to file the action as an administrator ad litem. Williford then petitioned the Jefferson County Probate Court for an appointment as personal representative of the decedent's estate, which petition was granted. The next day, Williford amended her wrongful-death complaint to substitute herself as personal representative for herself as administrator ad litem, more than two years after the decedent's death. Trinity moved to dismiss the amended complaint, which motion the circuit court denied. However, in a permissive appeal pursuant to Rule 5, Ala. R. App. P., the circuit court certified the controlling question of law as whether the administrator ad litem had the 'capacity' to file the wrongful-death action. After discussing Franks [v. Norfolk Southern Ry., 679 So.2d 214 (Ala. 1996),] and Justice Houston's special writing in that case, this Court answered the question from the circuit court by correctly stating that Trinity had cited no authority for the proposition that an administrator ad litem lacked the powers of a personal representative for the purpose of prosecuting a wrongful-death action and that nothing in § 43-2-250, Code of Ala. 1975, forbids an administrator ad litem from taking such action. The appellant's failure to find or to cite any previous decision on the issue and the absence of express language in § 43-2-250 forbidding an administrator ad litem from taking such action do not necessarily mean that the law does in fact empower an administrator ad litem to prosecute a wrongful-death action."
Golden Gate, 94 So.3d at 367-68 (Bolin, J., concurring specially)(some emphasis added).[5] In Williford, the parties did not present this Court with any authority indicating that an administrator ad litem lacks the authority to pursue a wrongful-death action under § 6-5-410. Williford, 21 So.3d at 718 ("No authority has been cited indicating that an administrator ad litem lacks the powers of a 'personal representative' for purposes of prosecuting a wrongful-death action."). Without authority to the contrary, this Court did not in Williford reverse the trial court's judgment for allowing an administrator ad litem to pursue the wrongful-death claim at issue. For this reason Justice Bolin concluded in his special concurrence in Golden Gate -and we agree-that Williford is not necessarily dispositive of the issue whether an administrator ad litem may pursue a wrongful-death claim-the issue currently before this Court.
In the present case, CMI and RAM have presented argument and authority indicating that an administrator ad litem appointed under § 43-2-250 does not have the authority to pursue a wrongful-death claim. Based on the reasoning set forth in Justice Bolin's special concurrence in Golden *1160 Gate, we conclude that Fields, in her capacity as an administrator ad litem,[6] does not have the authority to pursue a wrongful-death claim under § 6-5-410.[7] Accordingly, CMI and RAM have demonstrated that none of the plaintiffs are personal representatives of Marjorie's or Luis's estate. Therefore, we conclude that CMI's and RAM's mandamus petitions are due to be granted concerning the wrongful-death claims brought on behalf of the heirs of Marjorie and Luis.
Conclusion
Based on the foregoing, we conclude that CMI and RAM have failed to demonstrate that Adam and Rosenthal are without authority to pursue a wrongful-death claim on behalf of Mark's heirs. Therefore, in this regard, we deny CMI's and RAM's petitions for a writ of mandamus. We also conclude that CMI and RAM have demonstrated that none of the plaintiffs are personal representatives of Marjorie's or Luis's estate and, thus, lack the authority to pursue a wrongful-death claim on behalf of Marjorie's or Luis's heirs. Accordingly, the circuit court lacks subject-matter jurisdiction over the wrongful-death claims brought on behalf of Marjorie's and Luis's heirs, and CMI and RAM are entitled to have their summary-judgment motions granted in that respect and to have those claims dismissed for lack of subject-matter jurisdiction. Therefore, in this regard, we grant CMI's and RAM's petitions for a writ of mandamus and order the circuit court to grant CMI's and RAM's summary-judgment motions and dismiss the wrongful-death claims asserted by the heirs of Marjorie and Luis.
1170165-PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
1170281-PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Stuart, C.J., and Main, Wise, Sellers, and Mendheim, JJ., concur.
Bolin, J., concurs in the result.
Shaw and Bryan, JJ., concur in the result in part and dissent in part.
SHAW, Justice (concurring in the result in part and dissenting in part).
As to the portion of the main opinion denying the requests to issue a writ of mandamus directing the circuit court to dismiss the wrongful-death action based on the death of Mark Goldstein, I concur in the result. As to the portion of the main opinion granting the petitions and directing the circuit court to dismiss the wrongful-death actions filed by the administrator ad litem of the estates of Marjorie Gonzalez and Luis Angel Lopez Barillas, I respectfully dissent.
In Affinity Hospital, L.L.C. v. Williford, 21 So.3d 712 (Ala. 2009), this Court held *1161 that an administrator ad litem had the capacity as a "personal representative" to file a wrongful-death action under Ala. Code 1975, § 6-5-410. Under that precedent, the administrator ad litem in the instant case could file the wrongful-death actions regarding the deaths of Marjorie and Luis. In Williford, the Court noted that there were "several reported cases in which it appears that an administrator ad litem, without challenge, has filed a wrongful-death action." 21 So.3d at 716. See, e.g., Ex parte Sumter Cty., 953 So.2d 1235 (Ala. 2006) ; Franks v. Norfolk S. Ry. Co., 679 So.2d 214 (Ala. 1996) ; Fitts v. Minnesota Mining & Mfg. Co., 581 So.2d 819 (Ala. 1991) ; and Handley v. Richards, 518 So.2d 682, 683 (Ala. 1987) (Maddox, J., concurring specially). We further noted that the Franks decision appeared to presume, but without explicit analysis of the issue, that an administrator ad litem was a "personal representative," and a special writing further argued that such was the case. 21 So.3d at 717. The parties in Williford provided no authority indicating otherwise: "No authority has been cited indicating that an administrator ad litem lacks the powers of a 'personal representative' for purposes of prosecuting a wrongful-death action." 21 So.3d at 718. And nothing in the plain language of Ala. Code 1975, § 43-2-250, forbade "an administrator ad litem from taking such action." Id. We thus held that the administrator ad litem "had the capacity to file the wrongful-death action in this case." 21 So. 3d at 719-20 (emphasis added).
A writ of mandamus is appropriate when the petitioner shows a clear legal right to the order sought. Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala. 2001). The petitions before us argue that an administrator ad litem cannot be a "personal representative" for purposes of a wrongful-death action. Williford holds the exact opposite. The petitions, however, do not ask that Williford be limited, distinguished, or overruled; in fact, the petitions do not address Williford at all. The failure to address caselaw clearly contrary to the petitioners' argument, and the failure to make a sufficient argument discussing the merits of a complex issue of statutory construction,[8] equates to a failure to show a clear legal right to relief; thus, the petitions are due to be denied as to the action filed by the administrator ad litem for the estates of Marjorie and Luis.
Because limited arguments were presented in Williford, I am open to examining new arguments that were not raised in Williford on the issue whether an administrator ad litem is or is not a personal representative for purposes of filing a wrongful-death action. At this time, however, stare decisis requires that Williford be followed, absent a proper challenge. Ex parte McKinney, 87 So.3d 502, 509 n.7 (Ala. 2011) ("[T]his Court has long recognized a disinclination to overrule existing caselaw in the absence of either a specific request to do so or an adequate argument asking that we do so."), and Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C., 949 So.2d 893, 898 (Ala. 2006) (noting the absence of a specific request by the appellant to overrule existing authority and stating that, "[e]ven if we would be amenable to such a request, we are not inclined to abandon precedent without a specific invitation to do so").
Bryan, J., concurs.

The complaint also listed as plaintiffs Luis Alfonso Lopez Ochaita; Guadalupe Barillas Tejeda de Lopez; and Charver Union, a Delaware Corporation. Those parties are not relevant to these petitions.

The issue whether Alabama substantive law applies is not the subject of these mandamus petitions.

In fact, CMI notes in its petition that Gilbert and Alice have been dismissed from this action. CMI served on Jose the following interrogatory: "State the name and address of the court in which you were appointed personal representative, administrator, and/or administratrix of the estate of [Marjorie] and state the date of your appointment." Jose responded: "Application has been made to the court in Honduras and the order is still pending." The parties have not directed this Court's attention to anything indicating that a court in Honduras appointed Jose as the personal representative of Marjorie's estate.

Of course, this Court would consider any authority presented in a future case indicating that a personal representative of a foreign ancillary estate is not "[a] personal representative," as that term is used in § 6-5-410(a).

The plaintiffs state that "[t]his Court cited Williford with approval in Kirksey v. Johnson, 166 So.3d 633, 641 (Ala. 2014), referring to Williford as the 'controlling case' on this issue." However, the above quote from Kirksey relied upon by the plaintiffs is actually this Court's quoting the decision of the trial court under review in summarizing the facts and procedural history in that case. The trial court stated that Williford is the "controlling case"; this Court did not make such a statement. See Kirksey, 166 So.3d at 641. In fact, this Court specifically stated that "the question of Kirksey's capacity, as administrator ad litem, to bring the wrongful-death action is not before this Court." Kirksey, 166 So.3d at 645 n. 5.

We note that CMI and RAM also argue that Fields was not properly appointed as an administrator ad litem. However, we need not address that argument because, based on our conclusion, even if Fields was properly appointed as an administrator ad litem, she does not have the authority to pursue a wrongful-death action under § 6-5-410.

In his special writing, Justice Shaw takes the position that CMI and RAM have failed to present argument concerning Williford. However, CMI specifically states in its petition that, "[f]or all the many reasons articulated by Justice Bolin in his concurrence in Golden Gate Nat'l Senior Care, LLC v. Roser, 94 So.3d 365 (Ala. 2012), even a properly appointed administrator ad litem ... lacks the capacity of a 'personal representative' required under ... § 6-5-410." CMI's petition, at p. 28. As set forth above, in his special concurrence in Golden Gate, Justice Bolin thoroughly discusses Williford and explains why it is not controlling. CMI presented sufficient argument for this Court to consider this issue concerning the subject-matter jurisdiction of the circuit court.

The argument addressing the proper construction of § 6-5-410 merely refers, without discussion, to Justice Bolin's special writing in Golden Gate National Senior Care, LLC v. Roser, 94 So.3d 365 (Ala. 2012).